**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| TIMOTHY G. RILEY, | No. 20-15882 |
| Plaintiff-Appellant, | D.C. No. 3:17-cv-02897-CRB |
| v. | |
| VOLKSWAGEN GROUP OF AMERICA, INC., DBA Volkswagen of America, Inc., a New Jersey corporation; VOLKSWAGEN AG, | OPINION |
| Defendants-Appellees. | |
| LUKE G. SANWICK; KATHRYN SANWICK, | No. 20-15884 |
| Plaintiffs-Appellants, | D.C. No. 3:17-cv-03032-CRB |
| v. | |
| VOLKSWAGEN GROUP OF AMERICA, INC., DBA Volkswagen of America, Inc., a New Jersey corporation; VOLKSWAGEN AG, | |
| Defendants-Appellees. | |
| RICHARD V. ORTIZ; VIRGINIA TORRES ORTIZ, | No. 20-15885 |
| | D.C. No. 3:18-cv-06951-CRB |
| Plaintiffs-Appellants, | |

v.

VOLKSWAGEN GROUP OF AMERICA, INC., DBA Volkswagen of America, Inc., a New Jersey corporation; VOLKSWAGEN AG,

Defendants-Appellees.

---

JULIA ROBERTSON,

Plaintiff-Appellant,

v.

VOLKSWAGEN GROUP OF AMERICA, INC., DBA Volkswagen of America, Inc., a New Jersey corporation; VOLKSWAGEN AG,

Defendants-Appellees.

No.  20-15886

D.C. No. 3:18-cv-06956-CRB

---

BYRON CLENDENEN,

Plaintiff-Appellant,

v.

VOLKSWAGEN GROUP OF AMERICA, INC., DBA Volkswagen of America, Inc., a New Jersey corporation; VOLKSWAGEN AG,

Defendants-Appellees.

No.  20-15887

D.C. No. 3:18-cv-07040-CRB

---

SCOTT SALZER,

No.  20-15889

|  |  |
|---|---|
| Plaintiff-Appellant, | D.C. No. 3:18-cv-07050-CRB |
| v. | |
| VOLKSWAGEN GROUP OF AMERICA, INC., DBA Volkswagen of America, Inc., a New Jersey corporation; VOLKSWAGEN AG, | |
| Defendants-Appellees. | |

|  |  |
|---|---|
| KENNETH J. COON; MARIA E. COON, | No. 20-15890 |
| Plaintiffs-Appellants, | D.C. No. 3:18-cv-06966-CRB |
| v. | |
| VOLKSWAGEN GROUP OF AMERICA, INC., DBA Volkswagen of America, Inc., a New Jersey corporation; VOLKSWAGEN AG, | |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted December 10, 2021
San Francisco, California

Before: Ronald M. Gould and Daniel P. Collins, Circuit Judges, and David A. Ezra,[*] District Judge.

Opinion by Judge Gould

---

[*] The Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation.

# SUMMARY<sup>**</sup>

## Punitive Damages

In appeals stemming from the nationwide Volkswagen litigation related to emissions defeat devices installed in certain Volkswagen and Audi vehicles, the panel vacated punitive damages awards to appellants (who are plaintiffs who opted out of the class action), and remanded with instructions that the district court recalculate punitive damages.

Appellants are individuals who bought or leased a vehicle with an emissions defeat device, and they filed individual suits that were consolidated before the same judge who presided over the multidistrict litigation and class action settlements. The jury awarded four of the appellants various amounts in compensatory damages and $25,000 each in punitive damages. The district court reduced the punitive damages award to exactly four times the amount of the compensatory damages suffered by each plaintiff.

The panel held that the district court erred by holding that a punitive damages ratio calculation of four times the value of the compensatory damages award was the maximum punitive damages award permitted by the Constitution's Due Process Clause. The Supreme Court in *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575 (1996), established three guidelines governing whether punitive damages awards comply with due process. First, concerning the reprehensibility of the defendant's conduct, the panel held that Volkswagen's actions were highly reprehensible where it engaged in intentional deceit for years. In addition to the economic harm, evidenced by the compensatory damages, the deceit frustrated the fuel-economy, and reduced emissions objectives of those customers who bought their Volkswagens and Audi vehicles. The panel concluded that this was a paradigm case where high reprehensibility coupled with relatively low compensatory damages could support a higher multiplier for punitive damages consistent with due process. Second, concerning the proportionality between the harm, or potential harm, suffered by the claimant and his punitive damages, the panel held this case warrants a single digit multiplier greater than four times that of the compensatory

---

<sup>**</sup> This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

award, and in that respect, the district court erred. Here, the jury ratio for the punitive damages awarded varied from a low of 8 to 1 to a high of 43 to 1. The case did not support a multiplier above a single digit ratio because the damages were not insignificant. The panel concluded that here, a punitive damages award of approximately 8 times that of the compensatory damages award fairly comported with due process requirements under the Supreme Court's guidelines. The panel applied this ratio to all the appellants, despite the different ratios employed by the jury, where the defendant's conduct was the same towards each appellant and there was no meaningful difference in the type of harm experienced by each appellant. Third, concerning sanctions for similar misconduct in comparable cases, the panel held that the civil penalties in the California Unfair Competition Law ("UCL"), the Fair Advertising Law ("FAL"), and California Legal Remedies Act were not directly analogous. Thus, this factor did not require the panel to reduce the single digit multiplier punitive damages determined by the jury. The district court erred in concluding that a 4 to 1 ratio was the highest allowed in this case partially because under the UCL and FAL, the maximum civil penalty was $2,550 per violation.

Because the panel concluded that the district court erred in applying the *Gore* factors, the panel next considered what award of punitive damages comported with due process for each party. The panel held that the jury's multiple of eight times the actual compensatory damages award in the case of appellants Luke and Kathryn Sanwick was constitutionally permissible because a multiplier greater than four was appropriate in this case. The panel also concluded that it would be arbitrary and incorrect to set a different ratio between punitive damages and actual compensatory damages as to each of the plaintiffs under the circumstances of this case. The panel therefore vacated the punitive damages awards to each appellant and remanded with instructions that the district court recalculate punitive damages in an amount equal to eight times the actual compensatory damages determination.

The panel addressed additional issues presented by the case in a separately filed memorandum disposition filed simultaneously with this opinion.

## COUNSEL

Jeffrey B. Gurrola (argued), Cynthia E. Tobisman, and Joseph V. Bui; Greines, Martin, Stein & Richland LLP, Los Angeles, California; Bryan C. Altman, Altman Law Group, Los Angeles, California; Steve B. Mikhov, Knight Law Group LLP, Los Angeles, California; Scot D. Wilson, Call & Jensen APC, Newport Beach, California; Robert S. Peck, Center of Constitutional Litigation, Washington, D.C.; Hallen D. Rosner and Arlyn L. Escalante; Rosner, Barry & Babbitt LLP, San Diego, California; for Plaintiff-Appellant.

Robert J. Giuffra, Jr. (argued), Sharon L. Nelles, William B. Monahan, Suhana Han, Elizabeth N. Olsen, and William H. Wagener, Sullivan & Cromwell LLP, New York, New York; Sverker K. Hogberg and Laura K. Oswell, Sullivan & Cromwell LLP, Palo Alto, California; Michael Steinberg, Sullivan & Cromwell LLP, Los Angeles, California; for Defendants-Appellees.

GOULD, Circuit Judge:

These appeals stem from the nationwide Volkswagen litigation related to the emissions defeat devices installed in certain Volkswagen and Audi vehicles. Appellants are plaintiffs who opted-out of the class action, preferring to pursue their claims individually ("opt-out Plaintiffs"). After a three-phase trial, the district court awarded Appellants damages, but reduced the award of punitive damages to conform with constitutional standards established by the United States Supreme Court for punitive damages awards. Appellants challenge the district court's punitive damages calculations.[1]

In 2015, researchers discovered that Volkswagen had installed emissions defeat devices in some of its vehicles. The vehicles with the defeat devices produced emissions up to 40 times the maximum permitted by the legal standard, except that the emissions were diminished when the vehicles were undergoing emissions testing. The district court found that there was no evidence at trial that plaintiffs suffered any personal injury resulting from the defeat devices in their cars, nor did they bring a personal injury claim. In a press release in 2019, the EPA said that the

---

[1] Appellants also challenged the district court's rulings on Plaintiffs' claims under the Song-Beverly Act and the California Legal Remedies Act ("CLRA"). We address those state law issues, and other issues presented by the case, in a separate memorandum disposition filed simultaneously with this opinion.

increased emissions did not present a safety hazard to those who owned and operated the affected vehicles.

After the discovery of the defeat devices, the owners of affected cars filed thousands of lawsuits. These individual suits were sent to multi-district litigation, where the plaintiffs received the option of opting-in to a class settlement based on the type of affected vehicle that they owned. The cases of the plaintiffs who opted-in were consolidated into two classes for settlement, one for 2.0 liter vehicle owners and another for 3.0 liter vehicle owners.

Appellants Timothy Riley, Luke and Kathryn Sanwick, Richard and Virginia Ortiz, Julia Robertson, Byron Clendenen, Scott Salzer, and Kenneth and Maria Coon (collectively "Appellants") are individuals who bought or leased a vehicle with an emissions defeat device and opted-out of the class action settlements. Appellants filed individual suits that were consolidated before the same judge who presided over the multidistrict litigation and class action settlements. The jury awarded four of the appellants various amounts in compensatory damages and $25,000 each in punitive damages.[2] In a conscientious effort to comply with due process, the district

---

[2] Compensatory damages awards by Appellant were: Riley ($1,080); Robertson ($952); Salzer ($582); and the Sanwicks ($3,133). While the jury found that all seven Appellants had been economically harmed, the jury found that only four Appellants had proven economic damages.

court reduced the punitive damages award to exactly four times the amount of the compensatory damages suffered by each plaintiff.[3]

Appellants argue that the district court erred by holding that a punitive damages ratio calculation of four times the value of the compensatory damages award is the maximum punitive damages award permitted by the Constitution's Due Process Clause. We agree there was error in determining this limit.

We review the application of applicable constitutional guidelines *de novo*. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003). The Supreme Court in *BMW of North America, Inc. v. Gore* established three guidelines governing whether punitive damage awards comply with due process: (1) the reprehensibility of the defendant's conduct; (2) the disparity between the harm or potential harm suffered by the claimant and his punitive damages; and (3) the difference between the punitive damages and any civil penalties authorized or imposed in comparable cases. 517 U.S. 559, 575 (1996).

### A. Reprehensibility

Reprehensibility of the alleged conduct is "the most important indicium of the reasonableness" of punitive damages. *State Farm*, 538 U.S. at 419. To assess reprehensibility, we consider whether

---

[3] Punitive damages awards by Appellant were: Riley ($4320); Robertson ($3808); Salzer ($2328); and the Sanwicks ($12,532). These punitive damages amounts are exactly four times that of the individual compensatory damage awards.

the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*Id.*

We have held that "trickery or deceit [is] more reprehensible than negligence." *Planned Parenthood of Columbia/Willamette Inc. v. Am. Coal. of Life Activists*, 422 F.3d 949, 954 (9th Cir. 2005). Further, "infliction of economic injury, especially when done intentionally through affirmative acts of misconduct . . . can warrant a substantial penalty." *Gore*, 517 U.S. at 576 (citation omitted). While punitive damages cannot be used to punish a defendant for the harms to a third party, "[e]vidence of actual harm to nonparties can help to show that the conduct that harmed the plaintiff also posed a substantial risk of harm to the general public, and so was particularly reprehensible." *Philip Morris USA v. Williams*, 549 U.S. 346, 355 (2007).

Volkswagen's actions were highly reprehensible. Although Volkswagen's calculated deceit did not physically harm its vehicle customers, it engaged in intentional deceit for years. In addition to the economic harm, evidenced by the compensatory damages, the deceit frustrated the fuel-economy, and reduced emissions objectives of those customers who bought their Volkswagen and Audi vehicles. Appellants doubtless expected vehicles that met mandatory regulatory

7

standards for emissions. But they got vehicles that grievously understated noxious emissions whenever emissions were tested. Not only did those vehicles fail to comply with health-based emissions standards, they also were advertised as eco-friendly vehicles. In selling these cars, Volkswagen continued to make misrepresentations to consumers, preying upon those who sought eco-friendly vehicles. All of this directly contradicted the plaintiffs' contractual expectations.

The uncovering of this fraudulent scheme revealed Volkswagen's deliberate indifference to compliance with mandatory emissions standards—Volkswagen intentionally and fraudulently hid their vehicles' true emissions to the detriment of their customers and the public at large. Had Volkswagen's abhorrent behavior not been discovered by a third party, Volkswagen would have continued to defraud its customers and allow vehicles spewing noxious emissions well above EPA's health-based standards to operate undetected. Such regulatory standards are not a mere formality but rather represent the conscious safeguarding of community interests by a Congressionally-designated federal agency. *See* 42 U.S.C. § 7521(a)(1).

The EPA released a statement saying that the increased emissions in affected vehicles were forty times higher than normal. Although there was no proof that the increased emissions were physically harmful to the individual drivers and occupants, increased nitrous oxide ($NO_x$) emissions have been shown to cause serious public

8

health problems.[4]  Volkswagen's flagrant disregard of environmental standards fashioned by the EPA shows deliberate indifference to the public welfare and to welfare of all those who could be harmed by the excessive $NO_x$ levels that the vehicles emitted.

A high level of reprehensibility is present here. Volkswagen's actions were the result of intentional trickery and deceit, not accident or negligence.  On the factor of reprehensibility, this is a paradigm case where high reprehensibility coupled with relatively low compensatory damages can support a higher multiplier for punitive damages consistent with due process.

## B. Proportionality

Turning next to the proportionality issue, the question raised by this factor is whether the punitive damages awards by the jury were proportional to the harm caused by Volkswagen's scheme.  This requires assessing "the disparity between the actual or potential harm suffered by the [Appellants] and the punitive damages award." *State Farm*, 538 U.S. at 419.  The proportionality of punitive damages must

---

[4] In a joint statement, EPA and CARB said "$NO_x$ pollution contributes to nitrogen dioxide, ground-level ozone, and fine particulate matter.  Exposure to these pollutants have been linked with a range of serious health impacts, including asthma attacks and other respiratory illnesses that can be serious enough to send people to the hospital.  Exposure to ozone and particulate matter have also been associated with premature death due to respiratory-related or cardiovascular related effects. Children, the elderly, and people with pre-existing respiratory disease are particularly at risk for health effects of these pollutants." Press Release, CARB & EPA, *EPA, California Notify Volkswagen of Clean Air Act Violations* (September 18, 2015.); Further, the district court found that Appellants "presented evidence of the egregiousness of Volkswagen's misconduct, including expert testimony that increased $NO_x$ emissions increase the risk of harm to human health."

9

be assessed on a case-by-case basis; "there are no rigid benchmarks that a punitive damages award may not surpass." *Id.* at 425.

In *State Farm*, the Supreme Court explained that "[s]ingle-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution." *Id.* While leaving the option for higher damages ratios open, the Supreme Court suggested that a punitive damages award of "more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *Id.* (internal citation omitted). The Supreme Court also said that minimal actual damages coupled with high reprehensibility could allow due process to permit a multiple beyond four times actual damages. *See Gore*, 517 U.S. at 582. In fact, "low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages." *Id.*; *see also State Farm*, 538 U.S. at 425.

We have limited punitive damages to a 4 to 1 ratio "where there are significant economic damages . . . but behavior is not particularly egregious." *Planned Parenthood of Columbia/Willamette Inc.*, 422 F.3d at 962. However, we will consider a single digit multiplier above 4 to 1 "[i]n cases with *significant economic*

*damages* and more egregious behavior."[5]   *Id.* (emphasis added).  We have upheld punitive damages ranging from six to nine times compensatory damages in such cases.  *See Planned Parenthood of Columbia/Willamette Inc.*, 422 F.3d at 962 (holding a 9 to 1 ratio was constitutional); *Bains LLC v. Arco Products Co.*, 405 F.3d 764, 776–77 (9th Cir. 2005) (indicating that ratio between 6 to 1 and 9 to 1 would be constitutional); *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1044 (9th Cir. 2003) (upholding a roughly 7 to 1 ratio).

The district court relied on *Ramirez v. TransUnion LLC*, where we rejected a ratio of 6.75 to 1, and instead applied a ratio of 4 to 1 where the "compensatory award was substantial" and at the high end of the statutory damages.  951 F.3d 1008, 1037 (9th Cir. 2020), *rev'd and remanded on other grounds*, 141 S. Ct. 2190 (2021). In that case, the class members' statutory damages were $8 million and the punitive damages were $52 million.  *Id.*  However, we reiterate that there is no bright line rule for punitive damages.

Because we conclude that Volkswagen's reprehensibility was especially high and the compensatory awards were relatively low, although not negligible, we conclude that this case warrants a single digit multiple greater than four times that of the compensatory award, *see State Farm*, 538 U.S. at 425*,* and in that respect the

---

[5] We have also upheld multipliers above a single digit ratio "in cases where there are insignificant economic damages but the behavior was particularly egregious." *Planned Parenthood of Columbia/Willamette Inc.*, 422 F.3d at 962.

11

district court erred. We hold that the punitive damages award here should have been greater than four times that of the compensatory award.

We next assess the ratios used by the jury. The jury awarded each party $25,000 in punitive damages, despite the fact that these plaintiffs each had differing compensatory damages. The ratios for the punitive damages awarded varied from about a low of 8 to 1 to a high of 43 to 1.[6] The 8 to 1 ratio was the only single digit multiplier used by the jury.

This case does not support a punitive damages multiplier above a single digit ratio because the damages were not insignificant. *See Planned Parenthood of Columbia/Willamette Inc.*, 422 F.3d at 962. Thus, we will consider whether the 8 to 1 ratio comports with due process in this case.

We conclude that in the circumstances here, a punitive damages award of approximately 8 times that of the compensatory damages award fairly comports with due process requirements under the Supreme Court's *Gore* and *State Farm* guidelines. *State Farm*, 538 U.S. at 425 ("Single-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution, than awards with ratios in range of 500 to 1 or, in this case, of 145 to 1." (internal citations omitted)).

---

[6] Punitive damages to compensatory damages award ratios: 23.15 to 1 (Riley); 26.26 to 1 (Robertson); 42.96 to 1 (Salzer); and 7.98 to 1 (Sanwicks).

Further, we apply this ratio to all the Appellants, despite the different ratios employed by the jury. In determining punitive damage ratios, we must consider whether the jury had a permissible, non-arbitrary basis for applying different ratios to the different plaintiffs. *See, e.g. Planned Parenthood of Columbia/Willamette Inc.* at 961–62 (endorsing a defendant-by-defendant and plaintiff-by-plaintiff approach to punitive damages ratios where the defendants' conduct and the harm to each plaintiff differed).

The defendant's conduct was the same towards each plaintiff and there is no meaningful difference in the type of harm experienced by each plaintiff.[7] Moreover, as noted in the next section, the uniform amount that the jury awarded to each plaintiff was well above the maximum civil penalty that could have been imposed uniformly for each separate violation under the most closely analogous statute that provides for fixed penalties.[8] In these circumstances, the jury's application of different ratios in a quest to award the same exact dollar amount to each plaintiff was arbitrary and ignored the requirement of a reasonable relationship between a particular plaintiff's punitive award and that plaintiff's compensatory award. The jury applied the different ratios arbitrarily, so we apply to all Appellants the lowest

---

[7] Volkswagen and Audi presumably marketed their cars to all the plaintiffs by the same or similar means, and Volkswagen and Audi installed in all vehicles bought by appellants the same or similar defeat devices to show reduced emissions on testing.

[8] We thus do not address whether, had the jury imposed a uniform punitive damage amount comparable to the statutory civil penalty amount, equalization of awards would have complied with the *Gore* factors, despite the disparity in ratios.

ratio selected by the jury—an 8 to 1 ratio—in determining the maximum punitive damages permitted.

## C. Sanctions for Comparable Misconduct

For the third guidepost, the court looks at the disparity "between the punitive damages award and the 'civil penalties authorized or imposed in comparable cases.'" *State Farm*, 538 U.S. at 428 (quoting *Gore*, 517 U.S. at 575). The district court concluded that a 4 to 1 ratio was the highest allowed in this case partially because under the California Unfair Competition Law (UCL) and the Fair Advertising Law (FAL), the maximum civil penalty is $2,500 per violation. Appellants argue that while the CLRA does not itself have civil penalties, the fact that it does not have a limit on punitive damages means that Volkswagen was on notice that it would be exposed to significant penalties for its actions. *See, e.g. Planned Parenthood of Columbia/Willamette Inc.*, 422 F.3d at 963. They also point out, correctly, that the UCL and the FAL are not directly analogous, because they may also be invoked to punish much less reprehensible behavior.

Although this factor may weigh slightly against higher punitive damages, Volkswagen's actions were extremely reprehensible, and the civil penalties in these statutes are not directly analogous. Thus, this factor does not require us to reduce the single digit multiplier punitive damages determined by the jury.

14

**D. Calculating the maximum punitive damages allowed by due process in this case**

Because we hold that the district court erred in applying the *Gore* factors, we now consider what award of punitive damages comports with due process for each party. Rather than remanding for further assessment of the punitive damages limit, we think there is a value to parties and to the public in bringing this case to a conclusion. Because the district court specified both actual damages to Appellants and what it thought was a permissible punitive damages award in reduction of the higher award made by the jury, and because our review is *de novo*, we can assess the maximum constitutional limit for punitive damages in this case.

We conclude that the jury's multiple of eight times the actual compensatory damages award in the case of the Sanwicks is constitutionally permissible because, as explained above, a multiplier greater than four is appropriate in this case. We also conclude that, for the reasons explained earlier, it would be arbitrary and incorrect to set a different ratio between punitive damages and actual compensatory damages as to each of the plaintiffs under the circumstances of this case.

We therefore vacate and remand the punitive damages awards to each appellant with instructions that the district court recalculate punitive damages in an amount equal to eight times the actual compensatory damages determination.